UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **In re:**<br>**Cheryl Ackerman**<br>      **Debtor.** | Civ. No. 18-8045 (KM)<br><br>Bankruptcy Case No. 17-17032 |
| **Cheryl Ackerman,**<br>      **Plaintiff,**<br>    v.<br>**David Wolff, Esq.**<br>      **Defendant.** | **MEMORANDUM and ORDER**<br>**DENYING MOTIONS FOR NEW**<br>**HEARING AND STAY OF**<br>**BANKRUPTCY CASE** |

### KEVIN MCNULTY, U.S.D.J.:

This matter comes before the Court on the pro se Appellant Cheryl Ackerman's appeal (ECF no. 1) from an Order by Judge Rosemary Gambardella of the United States Bankruptcy Court for the District of New Jersey, dated March 9, 2018.[1] Although the Appellant is surely aggrieved and deeply affected by the bankruptcy, she has no proffered any viable legal grounds for overturning the bankruptcy court's orders.

After holding a hearing on its own Order to Show Cause, the Bankruptcy Court issued the March 9, 2018 Order, which reads as follows:

1. The respective Debtor motions (including motions to convert the case to Chapter 13, for reconsideration of prior motions, to reimpose automatic stay, etc.) found at Docket Nos. 120, 127, 134 and 137 are all denied.

---

[1] Appellant previously filed a Notice of Appeal from Bankruptcy Court regarding a different Order. *See* Civil Case No. 17-7040. On September 13, 2017, Appellant appealed Judge Gambardella's August 24, 2017 Order appointing an interim trustee. (ECF no. 1 of 17cv7040). On April 20, 2018, I dismissed the appeal for lack of prosecution. *See* (ECF no. 7 of 17cv7040).

1

2. The Debtor shall only be allowed to file a motion in the future for relief previously sought and denied, only if all of the following conditions are met via the filing of a supporting Certification, signed under penalty of perjury, that evidences the following:

   a) any claims the Debtor wishes to present are new claims never before raised and disposed of on the merits;

   b) the Debtor believes the facts alleged to be true, which facts must be supported by documentary proof; and

   c) the Debtor knows of no reason to believe her claims are foreclosed by controlling law.

3. If all conditions set forth in paragraph 2 above are met, the Court will subsequently schedule a return date for said motion.

The Order also included handwritten text stating: "THE CONDITIONS SET FORTH HEREIN SHALL APPLY TO ALL MOTIONS FILED ON OR AFTER FEBRUARY 14, 2018." (ECF no. 1-1).

The Appellant initiated appeal by filing a Notice of Appeal from Bankruptcy Court on April 19, 2018[2] (ECF no. 1), with attached Exhibit (ECF no. 1-1).

Four days later, on April 23, 2018, Appellant filed an "Emergency Motion to Stay the Bankruptcy Court" proceedings. (ECF no. 2). In the Motion, Appellant appeared to 1) request a Stay of the Bankruptcy Court proceedings due to her health issues, 2) object to Mr. Wolff's Motion to sell Appellant's property free and clear of liens under Section 363(f),[3] and 3) object to the Bankruptcy Court's denial of Appellant's Motion to Convert a Chapter 7 bankruptcy case to a Chapter 13 bankruptcy case.[4] (*Id.*) Attached to the Motion

---

[2] The date of filing on the Bankruptcy Court Docket is April 13, 2018. (*See* Bankruptcy ECF no. 160.)

[3] The Motion was filed by Trustee David Wolff, Esq. in Bankruptcy Court on April 6, 2018. See (Bankruptcy ECF no. 156). Mr. Wolff is the Appellee in this case.

[4] Appellant filed numerous Motions to Convert, which were all denied by the Bankruptcy Court. *See* (Bankruptcy ECF nos. 111, 152).

was a copy of Section 706 of the Bankruptcy Code, which addresses conversion of Bankruptcy cases. (*Id.*)

On April 30, 2018, Appellant filed a letter reiterating her request for an emergency stay, and asking this Court to grant the stay before May 8, 2018.[5] (ECF no. 3 at 1). Appellant stated that she was "unable to move" and was requesting a stay because of a "recent myocardial infarction. Cardiac surgery. Fractured toe. Metarsal. With daily chest pain." (*Id.*) The letter also included isolated references to Appellant's motion to convert to a Chapter 13 case and Mr. Wolff. (*Id.* at 2). Attached to the letter was a copy of Section 706 of the Bankruptcy Code, and a copy of what appeared to be Appellant's March 2, 2018 electrocardiogram results. (*Id.* at 3-4).

On May 3, 2018, I issued a Memorandum and Order denying Appellant's Emergency Motion for Stay of Bankruptcy Case No. 17-17032. (ECF no. 4). On that same day, Appellant filed a Motion to appoint pro bono counsel, (ECF no. 5), and a Motion for an Order to Show Cause, which includes the same contentions as Appellant's April 30, 2018 submissions, (ECF no. 6).

The next day, on May 4, 2018, Appellant filed a handwritten letter described as an "urgent motion to show cause for stay in bankruptcy court." (ECF no. 7 at 1).[6] In the letter, she reiterated her request for an emergency stay

---

[5] The Bankruptcy Court had a hearing scheduled on that date regarding Mr. Wolff's Motion to sell Appellant's property. *See* (Bankruptcy ECF no. 156).

[6] Appellant also filed other documents. She filed the following documents in one filing: 1) a handwritten letter, 2) a typed letter, 3) Teladoc Application Packet cover page and Teladoc Physician FAQ, 4) a typed letter, 5) a handwritten letter, and 6) Notice of Electronic Filing. (ECF no. 7).

The additional letters reiterate Appellant's health issues and include isolated references to Appellant's motion to convert to a Chapter 13 case and Mr. Wolff's Motion to sell Appellant's property free and clear of liens under Section 363(f). As to the Teladoc documents, their relevance to this appeal is unclear. According to the Teladoc Physician FAQ, Teladoc is "a network of licensed primary care physicians who diagnose routine, non-emergency medical problems via the telephone or video. Teladoc consulting physicians recommend treatment and prescribe medication (when appropriate) over the telephone 24 hours a day, 365 days a year to patients." (ECF no. 7 at 6).

3

to be granted by this Court before May 8, 2018. (*Id.* at 1). The letter states that the report of a surgeon and/or cardiologist's report is provided. (*Id.* at 1-2). No report was included in this filing.[7]

Three days later, on May 7, 2018, Appellant filed a five-page Supplement to her Motion to Stay, requesting an Order to Show Cause. (ECF no. 8).

The next day, on May 8, 2018, the Bankruptcy Court held its scheduled hearing on Mr. Wolff's Motion to sell Appellant's property, and issued an Order authorizing Mr. Wolff to sell the property for the sum of $1,025,000 (after the allowance of $25,000 in inspection item repair credits) to the Buyers ("Sale Order"). (Bankruptcy ECF no. 170). Under the terms of the Order, Appellant must remove all of her personal property and vacate the property on or before June 4, 2018. (*Id.* at 5). Accordingly, I deemed Appellant's hearing-related requests in ECF nos. 6-8 moot. *See* (ECF no. 11 at 4).

After the May 8th hearing, Appellant filed two additional documents under this docket. (ECF nos. 9 and 10). The first filing was made on May 15, 2018 and includes an eleven-page submission, (ECF no. 9), and the second filing was an "Emergency Motion to Stay the Bankruptcy Court" filed on May 16, 2018 (ECF no. 10).

Since that hearing, in addition to making the above-described filings in this Court under this docket, Appellant had also filed other submissions in the Bankruptcy Court. In that Court, on the same day that the Sale Order was issued, Appellant filed a letter requesting a tape recording from proceedings held on August 23, 2017 at 10:00 AM.[8]

---

[7]  Previously, Appellant had submitted a March 2, 2018 electrocardiogram. (ECF no. 3). As I stated in my May 3, 2018 Memorandum and Order, the significance of that document is not apparent. (ECF no. 4 at 5). At least on its face, it does not suggest that Ms. Ackerman is unable to participate in the case.

[8]  On that date, the Bankruptcy Court held a hearing on the Petitioning Creditors' Motion for Entry of an Order for Relief and Appellant's numerous submissions. *See* (Bankruptcy ECF no. 46 at 2). The following day, the Court issued an Order appointing an interim trustee, and scheduling a hearing for September 13, 2017 at

4

(Bankruptcy ECF no. 171). She also requested a waiver of the cost of the tape. (*Id.*) Two days later, on May 10, 2018, she filed a Notice of Appeal to District Court regarding the Sale Order[9] (Bankruptcy ECF no. 173), and a Motion for a Stay in Bankruptcy Court pending the District Court's decision on that appeal, (Bankruptcy ECF no. 177).

On May 17, 2018, I issued a Memorandum and Order denying Appellant's motions (ECF nos. 6, 10) for a stay of Bankruptcy Case No. 17-17032. (ECF no. 11).

On the next day, May 18, 2018, Appellant filed three motions in this Court: two Motions to appoint pro bono counsel[10] (ECF nos. 12 and 14), and a Motion for a "new hearing,"[11] (ECF no. 13). She also filed a letter in Bankruptcy Court. (Bankruptcy ECF no. 181). The handwritten letter is, for the most part, indecipherable. (*Id.*) As of today's date, the Bankruptcy Court has not addressed that letter.

Regarding Appellant's filing for a Motion for a new hearing, that filing includes the following six documents:[12] 1) a typed and handwritten Notice of Motion, 2) a typed and handwritten three-page letter in support of her motion,

---

11:00 AM for consideration of Appellant's Motions and to determine whether "to enter an Order for Relief, to dismiss the involuntary petition, or to grant other relief." (*Id.*) After that hearing was held, the Court issued an Order denying Appellant's Motions. (Bankruptcy ECF No. 63).

[9] The Notice of Appeal has been docketed in this Court under docket number 18cv9139. That appeal will be considered separately.

[10] As previously mentioned, a Motion to appoint pro bono counsel was also filed on May 3, 2018. (ECF no. 5). These Motions will be addressed in a Separate Order.

[11] Notwithstanding the ECF description of the Motion as a "Motion for 'new hearing,'" the Motion is a motion for a new hearing and a stay. As explained below, Appellant's submissions for this Motion include a request for a new hearing and a motion for a stay of the bankruptcy case.

[12] Although the allegations in those documents appear to be related to the Sale Order, and therefore should have been filed under 18cv9139, I will nevertheless consider Appellant's submissions.

5

3) a copy of what appears to be Appellant's February 26, 2018 electrocardiogram results (also commonly referred to as an "ECG" or "EKG") from Clara Maas Medical Center,[13] 4) an undated "To Whom it May Concern" typed letter from an Acute Care Nurse Practitioner at Newark Beth Israel Medical Center's Department of Cardiothoracic Surgery,[14] 5) a copy of a handwritten Complaint,[15] and 6) a copy of EKG results.[16]

In addition to submitting documents which have already been considered and rejected by this Court, Appellant also reiterates many of the same arguments. For example, using nearly identical language as her May 15th and 16th submissions,[17] Appellant's Notice of Motion references the May 8, 2018 Sale Order issued by the Bankruptcy Court. (ECF no. 13 at 1). Appellant requests a new hearing, new Judge, new jury trial, and an Order for a stay in Bankruptcy Court. (*Id.*) Moreover, Appellant's letter requests an emergency order to show cause and asks this Court to freeze the Sale Order. (*Id.* at 3). She points to numerous reasons why the Sale Order should be frozen, including but not limited to: because of the state of her health, because she did not authorize the sale of her home, and because the Sale Order hearing was not valid. (*Id.* at 3-4).

---

[13]   Appellant's filing includes two copies of the same results. *See* (ECF no. 13 at 6, 11).

This is not the first time that Appellant has provided this Court with a copy of her electrocardiogram results. On April 30, 2018, in connection with a letter-request for an emergency stay, Appellant submitted a copy of her March 2, 2018 electrocardiogram results. (ECF no. 3 at 4).

[14]   This letter was previously submitted by Appellant on May 7, 2018 as part of Appellant's Supplement to her Motion to Stay, (ECF no. 8 at 4), and on May 16, 2018 as part of Appellant's Emergency Motion to Stay the Bankruptcy Court, (ECF no. 10 at 3).

[15]   The filing includes two copies of the same Complaint. *See* (ECF no. 13 at 8-9).

[16]   The scanned copy of the results appears to be missing information. However, a close look at the results reveals that Appellant filed a copy of the same results on April 30, 2018. *See* ECF no. 3 at 4.

[17]   *See* ECF nos. 9 and 10.

6

Appellant further maintains that the Clerk's Office informed her that this Court will hold a hearing on June 18, 2018 as to her Bankruptcy Appeal, a date which she alleges is "too late for a Doctor with serious cardiac issues." (*Id.* at 3).[18] She therefore asks this Court to hear her appeal "today." (*Id.* at 5).

Four days later, on May 22, 2018, Appellant filed a Motion for Stay. (ECF no. 15). The filing includes the following five documents[19]: 1) a typed and handwritten Notice of Motion, 2) a typed and handwritten four-page "Affidavit" and "Affidavit of Merit" in support of her motion, 3) a two-page copy of an article entitled "Properly Challenging Jurisdiction from the Beginning" with some handwritten notes,[20] 4) a nine-page handwritten and typed letter, and 5) a copy of what appears to be Appellant's May 22, 2018 EKG results. (*Id.*)

In her Notice of Motion, Appellant appears to request a "meeting" "as soon as possible" with this Court regarding her stay request. (*Id.* at 1). As for Appellant's four-page letter, Appellant reiterates her health issues, requests for a stay, requests for a new hearing, allegations that Mr. Wolff is unethical, allegations that the Bankruptcy Judge is biased, and objections to the sale of her home. (*Id.* at 3-6). Appellant also presents a new argument and now asserts that the Bankruptcy Court does not have jurisdiction. (*Id.* at 3). Given the lack of jurisdiction, says Appellant, the sale of her home pursuant to the Court's

---

[18] I note that I have not set a hearing date for oral argument on this appeal. Rather, an automated text entry from the Clerk's Office was entered on May 21, 2018, and states: "Set Deadlines as to <u>13</u> MOTION for "NEW HEARING." Motion set for 6/18/2018 before Judge Kevin McNulty. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk's Office and does not supersede any previous or subsequent orders from the Court."

[19] Although the allegations in those documents appear to be related to the Sale Order, and therefore should have been filed under 18cv9139, I will nevertheless consider Appellant's submissions.

[20] The article is from this website: https://youarelaw.org/proerply-challenging-jurisdiction-from-the-beginning/.

7

Sale Order should be stopped. (*Id.* at 3-4). She further argues that under the rules of standing, this Court must provide a stay. (*Id.* at 5-6).

Additionally, Appellant's nine-page letter reiterates these arguments. (*Id.* at 9-17). She explains that: "[t]here is no jurisdiction for the federal court to sell a doctors home without consent." (*Id.* at 12). Appellant requests a stay of the Bankruptcy Court case, as well as this Court's permission to physically stay in her house. (*Id.*) She appears to argue that because she has patient charts in her home (charts which she asserts must be kept for seven years), she must be granted a stay. (*Id.*)

The next day, on May 23, 2018, as scheduled, the Bankruptcy Court held a hearing on Appellant's Motion for Stay pending appeal of the Court's Sale Order. (Bankruptcy ECF no. 183). For reasons unknown, Appellant did not appear at the hearing; however, Mr. Wolff did appear at the hearing. (*Id.* at 2). After the hearing, the Court issued an Order denying Appellant's Motion.[21] (*Id.*) As of today, Appellant has not made any further filings in Bankruptcy Court.

On the following day, May 24, 2018, Appellant filed a Complaint, a letter from Dr. Ellen Urrutia, and a four-page handwritten and typed letter in this Court. (ECF no. 16). The Complaint reiterates Appellant's requests for a new judge, a jury trial, and a stay. (ECF no. 16 at 1-5). Also enclosed is a May 23, 2018 "To Whom It May Concern" letter from Dr. Urrutia. (*Id.* at 6). The typed letter, on the Doctor's letterhead, reads as follows:

> Please be advised that Dr. Cheryl Ackerman is presently undergoing further evaluation for her cardiovascular disease in view of her ongoing severe symptomatology.
>
> Please feel free to call should you have any questions in her regard.

(*Id.*) As for Appellant's letter, Appellant requests an order to show cause hearing to be scheduled for May 25, 2018, and an emergency stay. (*Id.* at 7).

---

21    The Bankruptcy Docket does not include a copy of the transcript of the hearing.

She also renews the same arguments presented in her previous submissions. (*Id.* at 7-10).

Five days later, on May 29, 2018, Appellant filed a two-page typed letter asking for an "order to show cause for oral argument" and an emergency stay (ECF no. 17). She asserts that she is physically unable to move from her home on June 4, 2018 (as ordered by the Sale Order) because of the 40,000 patient charts she has stored in her home, and because of her health issues. (*Id.* at 2).

The next day, on May 30, 2018, Appellant filed various documents in one submission. (ECF no. 18). Appellant's submissions include a two-page typed and handwritten letter asking this Court to "freeze" the Sale Order and provide a stay because of her health issues. (*Id.* at 1-2). Appellant also references "legal malpractice" and the United States Supreme Court's decision in *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) regarding Article III standing. (*Id.* at 1-2). Appellant seems to rely on that case to support her claim that she has standing because she is suffering an "injury in fact." (*Id.* at 2).

Appellant also filed a copy of a May 21, 2014 e-mail exchange between herself and an attorney from the Archer law firm who had previously represented her. (*Id.* at 3). It appears that in the e-mail chain from four years ago, Appellant had contacted her former attorney regarding an appeal she sought to file in a matter before the New Jersey State Board of Medical Examiners. (*Id.*) The attorney responded by stating that he could not assist Appellant given that he had withdrawn from her representation about six months before for reasons he had previously provided in writing. (*Id.*) Appellant included handwritten notes on the copy of the e-mail. (*Id.*) The notes are indecipherable. (*Id.*) And finally, Appellant submitted a black and white blurry photograph which she alleges shows her injuries from an assault. (*Id.* at 4). The image in the photograph is unclear. (*Id.*)

I deny Appellant's request for a stay for the same reasons as explained in my two previous decisions. *See* (ECF nos. 4 and 10).

I note that Appellant's use of the phrase "unable to move" in her most recent submissions appears to have two different, yet related meanings. First, Appellant seems to refer to being physically "unable to move" her body because of her health conditions. She seems to argue that she is unable to appear and participate in the Bankruptcy proceedings because of her physical ailments. As to Appellant's February 26th and May 22nd EKG results, as I previously recognized in reference to her other EKG results, their significance is unclear and does not suggest that Appellant is unable to participate in this case. *See* (ECF no. 11 at 4 n.7). Moreover, Dr. Urrutia's letter is not evidence of a medical emergency that disables Appellant from participating in the bankruptcy case. It merely states that Appellant is undergoing "further evaluation." And, finally, as to Appellant's photograph of an alleged injury, the image in the photograph is unclear and is not evidence of a medical emergency. Importantly, despite being "unable to move" due to her health issues, Appellant has physically appeared in the Clerk's Office and filed papers in person on five separate occasions within the span of twelve days, specifically on May 18, 22, 24, 29, and 30, 2018. Appellant's continuous in-person filings put into question the extent of her alleged medical issues. Indeed, they raise a nearly inescapable inference that these are delay tactics intended to derail the bankruptcy proceedings and property sale.

Second, Appellant also appears to assert that she is "unable to move" herself and her belongings out of her home by June 4th because of her health issues and "storage issues" regarding patient charts. If there are indeed 40,000 patient records in Appellant's home, removal will likely be arduous. Still, the Appellant has had ample notice of the impending sale, and she gives no indication that she has taken any steps to prepare. She cannot, by doing nothing, obtain an indefinite stay of the Bankruptcy case.

I note that the Bankruptcy Docket reveals that Appellant did not appear for the May 23rd hearing in the Bankruptcy Court on her own motion for stay pending appeal. Her reasons for failing to appear are currently unknown. If

10

Appellant wishes to make a motion based on her alleged unavailability, it should be directed in the first instance to the Bankruptcy Court.

Appellant's claims that the Bankruptcy Court lacks jurisdiction I reject those claims as meritless.[22] A sale of property to satisfy creditors does not require the debtor's "consent." As to Appellant's *Lujan* and standing references, I reject them as unrelated to my consideration of the merits of Appellant's motions for a hearing and stay.[23]

---

[22] Under 28 U.S.C. § 157(b)(1), upon referral from a District Court, "Bankruptcy judges may hear and determine all cases under title 11 and *all core proceedings arising under title 11, or arising in a case under title 11*, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." (emphasis added). Section 157(b)(2) provides a non-exhaustive list of examples of "core proceedings," including "orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate," 28 U.S.C. § 157(b)(2)(N), and "matters concerning the administration of the estate," *id.* § 157(b)(2)(A). It is well-established that in "core proceedings," "the Bankruptcy Court assumes the role of a court of first instance with comprehensive power to hear, decide and enter final orders and judgments." *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999).

Therefore, the Bankruptcy Court had jurisdiction to hear and determine Mr. Wolff's Motion to sell Appellant's property because it was a "core proceeding," and the Court also properly issued a Sale Order. *See also* 11 U.S.C. § 105(a). Moreover, as to Mr. Wolff's role in the sale, Section 363 of the Bankruptcy Code provides the conditions under which a trustee may sell all or substantially all of the debtor's assets. 11 U.S.C. §§ 363(b)(1) and (f). Such conditions were satisfied in this case.

[23] *Lujan* relates to Article III standing. Appellant seems to be applying the jurisdiction-related doctrine of standing to the merits of her stay-request by arguing that this Court should grant a stay because Appellant is suffering an "injury in fact." The threshold matter of standing is not at issue. Rather, the issue before this Court is whether Appellant has met her substantive burden of satisfying the requirements for a stay of a judgment, order, or decree of the bankruptcy court pending appeal. *See In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015)(quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

Regarding standing, I do note, however, that in order to pursue this appeal, Appellant must establish Article III standing *and* standing to appeal from the Bankruptcy Court. *See Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 741 (3d Cir. 1995)(citation omitted)(noting that standing to appeal a bankruptcy case is more restrictive than Article III standing, which "need not be financial and need only be 'fairly traceable' to the alleged illegal action."). It is well-settled that

Appellant's request for a hearing is denied. Even taking her medical evidence at face value, I find no emergency circumstances warranting a stay. A hearing thus would not aid this Court with its consideration of the merits.

To the extent Ms. Ackerman may be requesting a stay pending appeal, I reject the application. There is no showing whatever of likelihood of success on the merits, as her papers contain no cogent indication that the Bankruptcy Court's March 9th Order,[24] denying Appellant's motions to convert the case to Chapter 13, for reconsideration of prior motions, to reimpose automatic stay, etc., and imposing conditions for Appellant's future motions, was in error. Further, she failed to appear for argument of her own motion for a stay in the bankruptcy court.

---

> [s]tanding to appeal in a bankruptcy case is limited to 'persons aggrieved' by an order of the bankruptcy court. Originally set forth in the Bankruptcy Act of 1898, the 'persons aggrieved' test now exists as a prudential standing requirement that limits bankruptcy appeals to persons 'whose rights or interests are 'directly and adversely affected pecuniarily' by an order or decree of the bankruptcy court.' '[P]erson[s] aggrieved' must show the order of the bankruptcy court 'diminishes their property, increases their burdens, or impairs their rights.' Whether someone is a person aggrieved is normally a question of fact.

In re Combustion Eng'g, Inc., 391 F.3d 190, 214 (3d Cir. 2004), *as amended* (Feb. 23, 2005)(internal citations and footnote omitted).

Here, for purposes of the instant motions, I assume that Appellant has satisfied Article III's standing requirement and the "persons aggrieved" standing requirement.

24  That Order is the subject of Appellant's instant appeal, which is docketed as 18cv8045. Any allegations regarding the Sale Order should be filed under the docket number assigned to that pending appeal, 18cv9139.

12

## ORDER

**IT IS THEREFORE** this 31st day of May, 2018,

**ORDERED** that Appellant's pending motions (ECF nos. 13 and 15) for a new hearing and stay of Bankruptcy Case No. 17-17032 are DENIED.

**KEVIN MCNULTY**
**United States District Judge**